FILED
2011 Mar-23 PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

JAMES R. EARLS,

PLAINTIFF,

v. CASE NO.: CV-11-J-887-S

JACK JUSTIS, *et al.*,

DEFENDANTS.

## MEMORANDUM OPINION and ORDER

This case is before the court on the plaintiff's *pro se* complaint (doc. 1) which this court has considered *sua sponte*.

Accepting the allegations of the complaint as true, the court construes them "in the light most favorable to the plaintiff." *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir.2004); citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.2003). The plaintiff brings this action to challenge the federal government's failure to collect income taxes while allowing tax delinquent companies to continue to receive government contracts. *See e.g.*, complaint at 22. Specifically, the plaintiff challenges the President and Congress' power to relieve individuals, United Parcel Service, corporations and business entities of their obligations to pay income taxes. Complaint, at 18-26. Further, the plaintiff challenged the President and Congress' ability "to grant legal remedies to illegal immigrants regarding wage theft, while

denying U.S. citizens such said protections afforded to those illegal immigrants...." Complaint, at 29.

The plaintiff has named as defendants twenty United Parcel Service ("UPS") board members (complaint, ¶¶ 1-3, 6-22); UPS senior management officials (complaint, ¶¶ 4-5); UPS regional and district managers (complaint ¶¶ 23-33). He has also named as defendants union officials with various unions (complaint, ¶¶ 34-37); the President and Vice-President of the United States (complaint, ¶¶ 38-39); and government advisors, cabinet members and counsel (complaint, ¶¶ 40-51). Lastly, the plaintiff has named numerous senators and representatives (complaint, ¶¶ 52-74, 76-93).

The plaintiff then sets forth specific facts such as that a feeder driver with UPS was fired for disconnecting the inboard computer in his truck (complaint, at 60); that the Government Accounting Officer has reported that in 2008 there was more than $58 billion in unpaid federal payroll taxes (complaint, at 62, 89); and that the Department of Labor is not fulfilling its mission to prevent and remedy violations of federal minimum wage and overtime laws (complaint, at 66, 95-97). The plaintiff lists numerous lawsuits, statutes, press releases, letters, and other documents in support of these allegations. *See e.g.*, complaint, at 93-116. The plaintiff also lists political contributions from UPS and several unions to members of Congress and

allegations of assistance to UPS from these members of Congress, then turns to alleged wrongdoings by Deloitte & Touche, an accounting firm. Complaint, 117-128. The plaintiff then sets forth allegations of corruption between UPS and unions. Complaint at 130-132.

The plaintiff next turns to a section entitled "Facts Giving Rise to this Action." Complaint, at 132. In that section, the plaintiff sets forth a chain of events from 1997 seemingly related to his employment with UPS. In 2002, the plaintiff wrote to Senator Kennedy and filed a complaint with the FBI about UPS employees being forced to skip meal periods. Complaint, at 134-135. The plaintiff was informed, also in 2002, that the U.S. Attorney's office could find no violations of criminal statutes. Complaint, at 135. In 2007 the plaintiff was warned by UPS that he was improperly accounting for his meal time. Complaint, at 137-138. The plaintiff then filed a complaint for income tax evasion against UPS, with the IRS whistleblower office. Complaint, at 138-144. The plaintiff then sent emails, complaints and other notifications to a variety of entities, each concerning minimum wage, overtime and child labor laws, and/or asking for an investigation of UPS. Complaint, at 145-160, 164-183, 189-214.

The plaintiff next asserts that all named defendants, the "Change to Win Coalition," the entire executive branch, the legislative branch, the UPS Board of

Directors and lower UPS management, various labor unions, the president and vice-president of the United States, the entire United States Justice Department, the IRS, the Department of Labor, the FBI, the United States Senate, the United States House of Representatives, and John and Jane Does constitute an "enterprise," and that the purpose of the enterprise was to obtain money through acts of theft and extortion from the employees of UPS, and other illegal activity. Complaint, 217-219.

The plaintiff states claims for RICO violations (Count I) (complaint, at 231-239); conspiracy (Counts II, III, V, VII, VIII)(complaint, at 239-260, 266-269, 273-286); money laundering (Count IV)( complaint, at 260-265); bank fraud (Count VI) (complaint, at 269-272). The plaintiff attached as an appendix to his complaint a 697 page list of the racketeering acts with which he charges the defendants.

While a complaint need not contain "detailed factual allegations," *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007), it does have to set forth "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

To satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing an entitlement to relief, and must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). Because the plaintiff is proceeding *pro se*, the court must construe his pleadings liberally and with leniency. *See e.g., GJR Inves., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998). However, this leniency does not give a court license to "rewrite an otherwise deficient pleading in order to sustain an action." *Id*. *Pro se* plaintiffs must abide by the Federal Rules of Civil Procedure. *See e.g., Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983); *Sanders v. U.S.*, 113 F.3d 184, 187 (11th Cir.1997); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.1989).

The Federal Rules of Civil Procedure address the need for pleadings to be clear and precise. The plaintiff's complaint has failed to meet this standard. Rather, the plaintiff's complaint reads as a "shot gun pleading." Such pleadings "harm the court by impeding its ability to administer justice. '[W]ast[ing] scarce judicial and parajudicial resources ... impedes the due administration of justice...'" *Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir.2001). Rule 8(a), Fed.R.Civ.Pro. provides that

a pleading "which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds for the court's jurisdiction ..." and "a short and plain statement of the claim showing that the pleader is entitled to relief..." Fed.R.Civ.Pro. 8(a). Additionally, each claim for relief must be presented in a separate count. Fed.R.Civ.Pro. 10(b). A complaint should also contain such clarity and precision that the defendant will be able to discern what the plaintiff is claiming. *Anderson v. District Bd. of Trustees of Cent. Fla. Community College*, 77 F.3d 364, 366-67 (11th Cir.1996).

Taking the allegations of the complaint as true, the court finds that the plaintiff alleges a variety of wrongdoings and conspiracies by a variety of people. Because the plaintiff brings suit on behalf of all citizens of the United States, he fails to allege any manner is which he, personally, has been harmed by the defendants' alleged enterprise. Instead, he asserts that the defendants "are illegally depriving Plaintiff of ... lawfully required employment tax revenue, which is needed to provide the citizens of the United States the services that is (sic) produced from the "Trust Fund" accounts, which such operating revenue is derived in large part from the revenue collected from Employment Taxes...." Complaint, at 309.

The court cannot discern from the plaintiff's complaint what allegations support what causes of action, whether some of the allegations have any bearing on

the claims in the complaint, or which defendants are allegedly responsible for which actions. This court does not have the duty to create claims which the plaintiff has not spelled out in his pleadings. *See Case v. State Farm Mut. Auto. Ins. Co.,* 294 F.2d 676, 677-78 (5th Cir.1961); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1296 (11th Cir.2002).

The events about which the plaintiff complains began in 1997. Even if the court could discern from the plaintiff's complaint what actions he contends formed the criminal enterprise, the statute of limitations for civil RICO actions is four years. A civil RICO action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern. This requirement is in accordance with the four year statute of limitations established by the United States Supreme Court because it requires plaintiffs to pursue the civil RICO remedy within four years of the time when they discovered, or reasonably should have discovered, that they are entitled to civil RICO damages for their injury. *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 751 (11th Cir.2000).

In his complaint, the plaintiff alleges he filed grievances against UPS for issues with his time card recording methods as early as 1997. Complaint, at 132. He knew of other grievances for similar issues in 1999. Complaint, at 133. In April 2002 the

plaintiff wrote to Senator Kennedy regarding UPS' practice of making employees skip meal periods. Complaint, at 134. He submitted RICO complaints to the US Attorney's Office for the Northern District of Alabama and to the FBI in October of 2003. Complaint, at 135. In the RICO context, "inquiry notice" controls. *Prudential Ins. Co. of America v. United States Gypsum Co.,* 359 F.3d 226, 236-37 (3rd Cir.2004) (rejecting the argument that the statute of limitations for civil RICO claims is triggered only when the injury becomes "actual"); *Takeuchi v. Sakhai*, 227 Fed.Appx. 106, 107 (2nd Cir.2007) (rejecting plaintiffs' "actual injury" argument and holding that the statute of limitations ran from the time plaintiffs were on inquiry notice as to their injuries).

Given the allegations of the plaintiff's complaint, the court cannot discern whether the statute of limitations has run, and further cannot discern exactly what fraudulent scheme the plaintiff alleges or how he, personally, was injured by it.

Without an injury personal to the plaintiff, he may not bring an action. Almost a century ago, the United States Supreme Court pondered the ability of taxpayers to bring actions regarding the administration of a statute, but found any such individual's interest is shared with millions. The Court stated:

> But the relation of a taxpayer of the United States to the federal government is very different. His interest in the moneys of the treasury-partly realized from taxation and partly from other sources-is

shared with millions of others, is comparatively minute and indeterminable, and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity.

The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern. If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect of the statute here under review, but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned. The bare suggestion of such a result, with its attendant inconveniences, goes far to sustain the conclusion which we have reached, that a suit of this character cannot be maintained. It is of much significance that no precedent sustaining the right to maintain suits like this has been called to our attention, although, since the formation of the government, as an examination of the acts of Congress will disclose, a large number of statutes appropriating or involving the expenditure of moneys for nonfederal purposes have been enacted and carried into effect....

We have no power per se to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. It amounts to little more than the negative power to disregard an unconstitutional enactment, which otherwise would stand in the way of the enforcement of a legal right. The party who invokes the power must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally. If a case for preventive relief be presented, the court enjoins, in effect, not the

> execution of the statute, but the acts of the official, the statute notwithstanding. Here the parties plaintiff have no such case.

*Commonwealth of Massachusetts v. Mellon,* 262 U.S. 447, 487-488, 43 S.Ct. 597, 601 (1923).

To the extent the plaintiff's claims are not barred by the statute of limitations or otherwise, the court is of the opinion they are due to be dismissed for lack of standing and for failing to state a claim upon which relief may be granted.

It is therefore **ORDERED** by the court that this case be and hereby is **DISMISSED WITHOUT PREJUDICE.**

**DONE** and **ORDERED** this the 23rd day of March, 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE